UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THOMAS HUDDLESTON, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JOHN CHRISTNER TRUCKING, LLC,**<br><br>**Defendant.** | **1:17-cv-00925-LJO-SAB**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE (ECF NO. 5)** |

## I. <u>INTRODUCTION</u>

Plaintiff Thomas Huddleston brings this wage-and-hour putative class action lawsuit against defendant John Christner Trucking, LLC ("JCT"). ECF No. 1. JCT moves to dismiss based on lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Northern District of Oklahoma, the forum specified in the forum-selection clause of the contract between the parties. ECF No. 5 ("Mot."). Plaintiff opposed, ECF No. 10 ("Opp."), and JCT replied, ECF No. 12 ("Reply"). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. <u>BACKGROUND</u>

According to the complaint, Huddleston worked as an "owner-operator" for JCT until August 2016. In that role, he was responsible for operating a commercial vehicle and transporting customer cargo to assigned destinations. Huddleston claims JCT misclassified its "owner-operators" as independent contractors, rather than employees, and thus violated a variety of state and federal labor

1  laws, including those governing payment of wages, minimum wage, meal and rest breaks, and wage

2  reporting.  Huddleston seeks to represent other "owner-operators" in a collective action under the Fair

3  Labor Standards Act ("FLSA") and class actions under California and Oklahoma law.

4      In support of its motion to dismiss, JCT submits, *inter alia*, a declaration from Shannon Crowley,

5  Vice President of Risk Management.  Crowley testifies that JCT is an Oklahoma limited liability

6  company headquartered in Sapulpa, Oklahoma, which operates in the forty-eight contiguous states.  JCT

7  keeps all company records at its Oklahoma headquarters and dispatches drivers from there.  Also, every

8  "owner-operator" completes an orientation at those headquarters.  JCT leases facilities in Phoenix,

9  Arizona, and Oklahoma City, Oklahoma.  It also leases "drop yards" in locations throughout the United

10 States, which are used for parking and staging trailers.  According to Crowley, JCT does not own or

11 lease any property in California, except for one drop yard it leases in Colton, California.  It also does not

12 have any employees in California except one individual who works from his home in Fresno to arrange

13 the transportation of customer freight.  JCT does not target any advertising specifically to California

14 and, since at least 2013, only 10- 12% of its total nationwide miles have been logged in California.  As

15 to plaintiff specifically, Crowley testifies that only three of Huddleston's twenty-five pick-ups or

16 deliveries were in the Eastern District of California.  The Crowley declaration includes as an exhibit a

17 copy of the "Independent Contractor Operating Agreement" ("ICOA") that Huddleston signed.  The

18 forum-selection clause of the ICOA provides as follows:

19     **GOVERNING LAW AND FORUM.**  This Agreement shall be interpreted in
   accordance with, and governed by, the laws of the United States and, of the State of

20 Oklahoma, without regard to the choice-of-law rules of Oklahoma or any other
   jurisdiction.  THE PARTIES AGREE THAT ANY CLAIM OR DISPUTE ARISING

21 FROM OR IN CONNECTION WITH THIS AGREEMENT, WHETHER UNDER
   FEDERAL, STATE, LOCAL, OR FOREIGN LAW (INCLUDING BUT NOT LIMITED

22 TO 49 C.F.R. PART 376), SHALL BE BROUGHT EXCLUSIVELY IN THE STATE
   OR FEDERAL COURTS SERVING CREEK COUNTY, OKLAHOMA.  CARRIER

23 AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE
   OF SUCH COURTS.

24 ECF No. 5-1, Ex. A (ICOA) ¶ 23.

25

2

In response, Huddleston submits his own declaration. ECF No. 10-1. Therein, he states that he is a resident of California and that much of his work activity took place in California. Specifically, he says that a significant portion of his drop-offs and pick-ups were located in Tulare, Stockton, Fresno, Newman, Turlock, Modesto, Merced, Madera, and Livingston (all located within the Eastern District of California) and that the vast majority of his total driving miles were related to either a pick-up or drop-off in California. He testifies that JCT said it would make every effort to make his first and last stop of any given trip in California so his work would be completed close to home, and that his first and last stops were indeed in California. As to the ICOA, he testifies that when he was in Oklahoma for orientation, he was told that the ICOA was nonnegotiable, was told that it was offered on a take-it-or-leave-it basis, and that the forum-selection clause and its effects were never explained to him. He further testifies that litigating this case in Oklahoma would impose a prohibitive economic hardship on him due to the cost of travel and time away from work, problems that he would not experience if the case were to remain in California.

### III. LEGAL STANDARD

**A.    Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) authorizes motions to dismiss for lack of personal jurisdiction. If a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). The plaintiff need only make a prima facie showing of jurisdiction to defeat the motion to dismiss, but "may not simply rest on the bare allegations of the complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "[U]ncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

**B.    Venue**

Federal Rule of Civil Procedure 12(b)(3) authorizes motions to dismiss for improper venue.

1    When venue is challenged, the court must determine whether the case falls within one of the three

2    categories set out in the general venue statute, 28 U.S.C. § 1391.  Plaintiff bears the burden of showing

3    that venue is proper.  *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.

4    1979).  In the context of a motion under Rule 12(b)(3), a court need not accept as true all allegations in

5    the complaint, but may consider facts outside the pleadings.  *See Murphy v. Schneider Nat'l, Inc.*, 362

6    F.3d 1133, 1137 (9th Cir. 2004).  The court, however, "is obligated to draw all reasonable inferences in

7    favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  *Id*. at

8    1138.

9    **C.**    **28 U.S.C. § 1404 And Forum-Selection Clause**

10            28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest

11   of justice, a district court may transfer any civil action to any other district or division where it might

12   have been brought or to any district or division to which all parties have consented."  The Supreme

13   Court has commanded that "[i]n the light of present-day commercial realities and expanding

14   international trade[,] . . . [a] forum [selection] clause should control absent a strong showing that it

15   should be set aside."  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972).  When a case

16   concerns enforcement of a forum-selection clause, § 1404(a) provides a mechanism for its enforcement

17   and "a proper application of section 1404(a) requires that a forum-selection clause be given controlling

18   weight in all but the most exceptional cases."  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.*

19   *Dist. of Tex.*, 134 S. Ct. 568, 579 (2013) (internal quotation omitted).  Plaintiff bears the burden of

20   showing the exceptional circumstances that make transfer inappropriate.  *Id*. at 581.

21            The Court applies federal law to the interpretation and enforcement of a forum-selection clause.

22   *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  The U.S. Supreme Court

23   has held that forum-selection clauses are presumptively valid and should only be set aside if the party

24   challenging enforcement can "clearly show that enforcement would be unreasonable and unjust."  *M/S*

25   *Bremen*, 407 U.S. at 1.  A "valid forum-selection clause [should be] given controlling weight in all but

1  the most exceptional cases." *Atl. Marine Const. Co*, 134 S.Ct. at 581.

2      A forum-selection clause may be deemed unreasonable under the following circumstances: (1) if

3  the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party

4  wishing to repudiate the clause would effectively be deprived of his day in court were the clause

5  enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is

6  brought. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 457 (9th Cir. 2007). Forum-

7  selection clauses are also scrutinized for "fundamental fairness," and may be deemed unfair if inclusion

8  of the clause was motivated by bad faith, or if the party had no notice of the forum provision. *Carnival*

9  *Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991). "The party challenging the clause bears a 'heavy

10  burden of proof.'" *Murphy,* 362 F.3d at 1140 (quoting *M/S Bremen.,* 47 U.S. at 17).

11  **IV. <u>DISCUSSION</u>**

12      Although it is not mandatory, courts considering a challenge to both personal jurisdiction and

13  venue generally decide the issue of personal jurisdiction first. *See Leroy v. Great W. United Corp*., 443

14  U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to

15  exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of

16  choosing a convenient forum."). The Court begins its analysis with JCT's challenge to personal

17  jurisdiction.

18  **A.**    **<u>Personal Jurisdiction</u>**

19      Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over

20  persons. *See* Fed. R. Civ. P. 4(k)(1)(A). Under California's long-arm statute, courts may exercise

21  personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United

22  States." Cal. Civ. Proc. Code Ann. § 410.10 (2004). Because California's long-arm statute allows the

23  exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, the question

24  here is whether assertion of personal jurisdiction over JCT comports with the limits imposed by federal

25  due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). It is well established that

the Fourteenth Amendment's Due Process Clause limits the power of a court to exercise jurisdiction over out-of-state defendants who do not consent to jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011). There are two kinds of personal jurisdiction that a court may exercise over an out-of-state defendant. *Id*. at 919. The first, known as "general jurisdiction," exists if the defendant's contacts with the forum are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). The second, known as "specific jurisdiction," exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state." *Id*. at 319. JCT argues that neither general nor specific personal jurisdiction exists here. Huddleston does not argue that the Court could exercise general jurisdiction over JCT but contends that the Court does have specific jurisdiction over JCT.

### 1.   Specific Jurisdiction

The touchstone for asserting specific jurisdiction over a nonresident defendant is "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted). "The proper question is whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 1125. The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction: (i) the defendant must have purposefully availed itself "of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (ii) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. Once the plaintiff carries this burden, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

### a.   Purposeful Direction

6

The test's first prong encompasses both purposeful direction and purposeful availment. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Id*. In contract cases, courts generally apply the purposeful availment test, while in tort cases they use the purposeful direction analysis. *Id*. "Although a FLSA claim for relief ostensibly arises from an employment contract, courts have likened FLSA claims to tort claims and have applied the purposeful direction standard." ECF No. 5-3, *Huddleston v. John Christner Trucking, LLC*, No. 17-cv-02081-RS ("*Huddleston I*"), slip op. at 6-7 (N.D. Cal. July 6, 2017) (citing *Holliday v. Lifestyle Lift, Inc*., No. C 09-4995 RS, 2010 WL 3910143, at *3 (N.D. Cal. Oct. 5, 2010)); *Hernandez v. Martinez*, No. 12-CV-06133-LHK, 2014 WL 3962647, at *4 (N.D. Cal. Aug. 13, 2014).

The purposeful direction test requires satisfaction of all three prongs of the Supreme Court's effects test from *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Schwarzenegger*, 374 F.3d at 805. That test requires showing that the defendant (1) has committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*. JCT's setting employment policies and wages is an "intentional act" that satisfies the first prong, and applying them in the forum state likewise satisfies the third prong. *Holliday*, 2010 WL 3910143, at *3-*4.

JCT argues that because it is an Oklahoma corporation that holds its driver orientations in Oklahoma and bases its drivers' compensation on miles traveled nationwide, not merely in California, it "never directed its actions at California," and the second prong is left unsatisfied. Mot. at 7. The Court disagrees. JCT's contacts with California are not mere happenstance resulting from Huddleston's incidental residence in the state independent of JCT's conduct. Huddleston "alleges that JCT contracts with California residents and instructs them (and others) to make pick-ups and drop-offs in California. It is thus not Huddleston's personal choice to live in California which drives the jurisdictional analysis,

7

1    but JCT's choice to dispatch deliveries to and from California which does." *Huddleston I*, slip. op. at 7.

2    Indeed, courts have found the requirements of specific personal jurisdiction satisfied where a shipping

3    company contracts to ship goods from one state to a second state and a cause of action arises in a third

4    state through which the goods were passing. *See, e.g., Brandi v. Belger Cartage Serv., Inc*., 842 F.

5    Supp. 1337, 1341-42 (D. Kan. 1994) ("[G]iven the nationwide nature of Professional's transportation

6    brokerage service, it should certainly have foreseen the possibility of litigation arising in a state through

7    which it had arranged for the shipment of goods."); *Turner v. Syfan Logistics, Inc.*, No. 5:15CV81, 2016

8    WL 1559176, at *5 (W.D. Va. Apr. 18, 2016) ("It can come as no surprise to Syfan that litigation in

9    Virginia might ensue when Syfan's conduct ensured DD would haul a load of frozen chicken across a

10   significant portion of the state.").[1]   The purposeful-direction requirement is satisfied.

### b.   Arising Out Of Forum-Related Activities

12       Purposeful availment is not enough; the claims in this case must also arise out of FCT's contacts

13   with California. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

14   This second prong of the specific jurisdiction test is satisfied if the plaintiff would not have been injured

15   "but for" the defendant's forum-related contacts. *See Terracom v. Valley National Bank*, 49 F.3d 555,

16   561 (9th Cir. 1995).  In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that "[t]he 'but for'

17   test is consistent with the basic function of the 'arising out of' requirement—it preserves the essential

18   distinction between general and specific jurisdiction. . . . The 'but for' test preserves the requirement that

19   there be some nexus between the cause of action and the defendant's activities in the forum." 897 F.2d

20   377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991); *see also Walden*, 134 S. Ct. at

21   1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related

22   conduct must create a substantial connection with the forum State.").

---

[1] Huddleston has also presented a *prima facie* case under the purposeful availment test.  In contract cases, the Ninth Circuit inquires whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s] [a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. *Yahoo*, 433 F.3d at 1206; *Schwarzenegger*, 374 F.3d at 802.  JCT contracted with Huddleston (a California resident) to pick up and drop off cargo in California, which is enough to satisfy the test.

8

JCT argues that the centerpiece of Huddleston's complaint is the Fair Labor Standards Act ("FLSA"), which set nationwide standards, and because Huddleston performed long-haul truck-driving services throughout the country, the FLSA claims "could have arisen whether he was a resident of California, Connecticut, Colorado, or any other state in the country." Mot. at 8.  Being primarily a FLSA case, JCT contends, "[i]t cannot be said that JCT's California operations made the FLSA claim (or Oklahoma state claims) uniquely possible." Reply at 3.

While FLSA claims can arise in any state, JCT's decision to hire Huddleston, a California resident, to make pick-ups and drop-offs in California means that his claims arose, at least in part, there. Indeed, the list of pick-ups and drop-offs appended as Exhibit B to the Crowley Declaration shows that twelve of the twenty-five loads that JCT assigned to Huddleston had origin or destination points within the state of California.  ECF No. 5-1, Crowley Decl. ¶¶ 30-31, Ex. B.  "By orchestrating deliveries to and from California and applying the allegedly unlawful employment practices to persons performing those transportation services, [JCT] targets California." *Huddleston I*, slip op. at 8.  "Even though the defendant's headquarters—from which the challenged policies originated—were located outside of California, jurisdiction was still proper based on the application of the policies to the company's activities in this state." *Id*. (citing *Holliday*, 2010 WL 3910143, at *4).  The policies at issue may have their origin in Oklahoma, but JCT's decision to purposefully direct its activities toward California and apply those policies in this forum give rise to specific personal jurisdiction.  Indeed, "but for JCT's transportation operation in California, Huddleston would not have any potential claim under California law." *Id*. at 9.  Huddleston's claims arise out of JCT's forum-related activities, and the second requirement is satisfied.

### c.   <u>Reasonableness</u>

After the first two prongs of the test have been met, the defendant has the burden of showing that the Court's jurisdiction would be unreasonable.  *Bancroft & Masters, Inc.*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476).  In determining whether jurisdiction is reasonable, courts consider seven

1    factors: (1) the extent of a defendant's purposeful interjection into the forum; (2) the burden on the

2    defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's

3    state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

4    of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective

5    relief; and (7) the existence of an alternative forum.  *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1114

6    (9th Cir. 2002).  "No one factor is dispositive; a court must balance all seven."  *Panavision Int'l, L.P. v.*

7    *Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

8        JCT has not met its burden of showing that this Court's exercise of specific jurisdiction would be

9    unreasonable.  As discussed above, JCT purposefully injected itself into California through its decision

10   to conduct shipping in the forum.  This constitutes some purposeful injection into California and

11   supports the reasonableness of the exercise of personal jurisdiction over JCT.  Second, litigating in

12   California would impose some burden on JCT, but because "modern advances in communications and

13   transportation have significantly reduced the burden of litigating in another [jurisdiction]," *Sinatra v.*

14   *Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988), having to obtain or present evidence from

15   JCT's personnel in Oklahoma will not impose an unreasonable burden on JCT.  Third, JCT does not

16   contest that the exercise of jurisdiction would conflict with the sovereignty of Oklahoma, its state of

17   domicile, though the Court notes that the bulk of Huddleston's claims are brought under California state

18   law, and the FLSA analysis will be the same in either California or Oklahoma.  This factor does not

19   weigh in favor of a finding of unreasonableness.  Fourth, the interest of the forum state is great, because

20   California has a strong interest "in protecting its citizens from the wrongful acts of nonresident

21   defendants."  *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th Cir. 1995).  Fifth, the question of

22   efficient judicial resolution is neutral.  This factor primarily concerns "where the witnesses and the

23   evidence are likely to be located."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir.

24   1993) *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

25   1199 (9th Cir. 2006).  Though JCT's corporate documents and witnesses likely will be located in

1   Oklahoma, Huddleston and other members of the California class likely will be located in California.

2   Because document collection is now mostly an exercise in electronic discovery, the presence of

3   corporate documents in Oklahoma does not weigh heavily in favor of finding that jurisdiction in

4   California would be unreasonable.  Sixth, a California forum is important to Huddleston's interest in

5   convenient relief, since he is a resident of and works in this forum and has averred that traveling to

6   Oklahoma to litigate this case would present a burden.  ECF No. 10-1, Huddleston Decl. ¶ 12.  Seventh,

7   Oklahoma is available as an alternative forum.  However, "[w]hether another reasonable forum exists

8   becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource, Inc. v.*

9   *AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011).  Thus, this factor is not at issue.

10       JCT has not made a sufficient showing that the exercise of personal jurisdiction is unreasonable.

11   **B.**   <u>**Venue**</u>

12       Under the general venue statute, a civil action may be brought in: (1) a judicial district in which

13   any defendant resides, if all defendants are residents of the state in which the district is located; (2) a

14   judicial district in which a substantial part of the events or omissions giving rise to the claim occurred;

15   or (3) if there is no district in which an action may otherwise be brought as provided in this section, any

16   judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such

17   action.  *See* 28 U.S.C. § 1391(b).  In a state which has more than one judicial district, corporate

18   defendants "shall be deemed to reside in any district within which its contacts would be sufficient to

19   subject it to personal jurisdiction if that district were a separate state."  *Id.* § 1391 (d).

20       Because California is a state with multiple judicial districts, a district-specific jurisdictional

21   analysis is required here.  The general rule is that each plaintiff in a class action must individually satisfy

22   venue, so the venue determination is "based on the plaintiffs in the class action—not absent class

23   members."  *Levine v. Entrust Grp., Inc*., No. C 12-03959 WHA, 2012 WL 6087399, at *4 (N.D. Cal.

24   Dec. 6, 2012).  Huddleston alleges in the Complaint that he "would regularly engage in JCT's business

25   in various locations within this judicial district, including but not limited to Fresno, Stockton, Tulare,

1  Newman, Turlock, Modesto, Merced, Madera, and Livingston." ECF No. 1 at ¶ 18.  He testifies in his

2  declaration that "[m]uch" of his JCT-related work took place in California and that he drove "all over"

3  the state, including making a "significant portion" of his pick-ups and drop-offs in the cities within this

4  District listed in paragraph 18 of the Complaint.  ECF No. 10-1, Huddleston Decl. ¶ 9.

5          JCT responds that only three of the twenty-five loads that Huddleston performed had pick-ups or

6  deliveries that took place within this district and that in any case, the classification decisions giving rise

7  to this suit took place at JCT's corporate headquarters in Oklahoma and not in California at all.  Reply at

8  6-8.

9          The general venue statute does not authorize venue in a single district in which the most

10  substantial part of the events or omissions giving rise to the claim occurred.  Instead, the federal circuit

11  courts appear to agree that venue may be proper in multiple districts if a "substantial part" of the

12  underlying events took place in each of those districts.  *See Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353,

13  356 (2d Cir. 2005) (collecting cases from various federal courts of appeals).  Thus, Huddleston need not

14  show that the Eastern District of California has the *most* substantial relationship to the dispute,

15  *Kirkpatrick v. Rays Group*, 71 F. Supp. 2d 204, 213 (W.D.N.Y. 1999), or that it is the "best" venue.

16  *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005).  Rather, "for

17  venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred

18  in the district in question, even if other material events occurred elsewhere."  *Gulf Ins. Co.,* 417 F.3d at

19  357.  Though only a quarter of the loads with pick-ups or drop-offs in California occurred within the

20  Eastern District, that is enough to satisfy the requirement that a "substantial" portion of the events giving

21  rise to the suit arise in the District, "even if a greater part of the events occurred elsewhere."  *Farm*

22  *Credit W., PCA v. Lanting*, No. 1:13-CV-00712-AWI, 2013 WL 3730391, at *2 (E.D. Cal. July 12,

23  2013).  *See also Kia Motors Am., Inc. v. MPA Autoworks,* No. CV 05-4928-NM EX, 2006 WL 8074721,

24  at *3 (C.D. Cal. Jan. 10, 2006) ("Because venue can properly lie in multiple districts, the court need not

25  compare sales figures in an effort to find the 'best venue'; rather the question is whether the venue

12

1   chosen by a plaintiff is proper.").

2   **C.      Forum-Selection Clause And 28 U.S.C. § 1404**

3       JCT argues in the alternative that even if this Court does have specific personal jurisdiction and

4   venue is proper in this District, the case should be transferred to the Northern District of Oklahoma

5   pursuant to 28 U.S.C. § 1404 and the forum-selection clause.[2]

6       "The scope of the claims governed by a forum selection clause depends [upon] the language used

7   in the clause." *Ronlake v. US–Reports, Inc.*, No. 1:11–CV–02009 LJO, 2012 WL 393614, at *3–4 (E.D.

8   Cal. 2012).  Where a forum-selection clause uses the phrases "arising under," "arising out of," or similar

9   language, the clause is construed narrowly to cover only disputes "relating to the interpretation and

10  performance of the contract itself." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir.

11  2011).  Where, however, the clause uses broader language, such as "relating to" and "in connection

12  with," courts read the clause more broadly.  *Robles v. Comtrak Logistics, Inc*., No. 2:13-CV-00161-

13  JAM-AC, 2015 WL 1530510, at *3 (E.D. Cal. Apr. 3, 2015).  The forum-selection clause here provides

14  that "any claim or dispute arising from or in connection with" the ICOA "shall be brought exclusively in

15  the state or federal courts serving Creek County, Oklahoma."  ICOA ¶ 23.  This language has broad

16  reach, and because Huddleston's claims concern the relationship created by the ICOA, which created the

17  working relationship between the parties, his claims fall within the scope of the forum-selection clause.

18  *LaCross v. Knight Transportation, Inc.*, 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015); *Robles*, 2015 WL

19  1530510, at *4.

20      The Ninth Circuit has outlined three situations in which enforcement of a forum-selection clause

21  would be unreasonable: "(1) if the inclusion of the clause in the agreement was the product of fraud or

22  overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in

23

24  ───────────────

25  [2] JCT also argues for transfer to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Mot. at 11-12.

1  court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the

2  forum in which suit is brought." *Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133, 1140 (9th Cir. 2004)

3  (internal citation and quotation marks omitted).

4  **1.**      **Enforceability Of Forum-Selection Clause**

5  **a.**      **Fraud Or Overreaching**

6  "For a party to escape a forum selection clause on the grounds of fraud, it must show that

7  'the *inclusion of that clause in the contract* was the product of fraud or coercion.'" *Richards v. Lloyd's*

8  *of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506,

9  518 (1974)) (emphasis in original). "'Overreaching' is a ground 'short of fraud,' and a mere showing of

10  'non-negotiability and power difference' does not render a forum selection clause unenforceable."

11  *Mahoney v. Depuy Orthopaedics, Inc.,* No. CIVF 07–1321 AWI SMS, 2007 WL 3341389, at *7 (E.D.

12  Cal. 2007) (citing *Murphy,* 362 F.3d at 1141; *E.J. Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d

13  1115, 1126 (E.D. Cal. 2006)).  The party opposing enforcement of the forum selection clause on the

14  grounds of fraud or overreaching "must show that the inclusion of the clause itself into the agreement

15  was improper; it is insufficient to allege that the agreement as a whole was improperly procured." *Id.*

16  Huddleston asserts that while JCT representatives outlined certain provisions of the ICOA prior

17  to his signing it, he was unaware of the forum-selection clause and its implications.  He also asserts that

18  the power differential between himself and JCT, the inability to negotiate the contract, and his lack of

19  advanced formal education all work to render the provision a product of overreaching.  Opp. at 18.

20  However, "the Ninth Circuit has rejected the argument that unequal bargaining power is a

21  ground to reject enforcement of a forum selection clause in an employment contract." *Marcotte v.*

22  *Micros Sys., Inc.,* No. C 14–01372 LB, 2014 WL 4477349, at *7 (N.D. Cal. 2014) (citing *Murphy,* 362

23  F.3d at 1141).  A forum-selection clause is "not unreasonable merely because of the parties' unequal

24  bargaining power: it is enforceable if there is reasonable communication of the clause." *Id.* (citing

25  *Carnival Cruise Lines,* 499 U.S. at 595.  The clause here is clearly marked; the section header is bolded,

and the forum-selection provision is in capital letters.  Huddleston does not allege that he was prevented from reading the IOCA, misled about the effect of the forum-selection clause, or that the clause was fraudulently inserted without his knowledge.  There is nothing to indicate that the provision was the product of undue influence or overreaching.

Huddleston has failed to provide any evidence that the Contract's terms regarding forum selection were not clearly communicated in the ICOA or that the inclusion of the forum selection clause was the product of fraud or overreaching.  As such, the argument regarding fraud and overreaching fails.

### b.  Deprived Of Day In Court

Huddleston has submitted an affidavit outlining the "prohibitive" financial hardship associated with litigating this case in Oklahoma, Huddleston Decl. ¶ 12, which he asserts is substantial enough that he "may not be able to maintain his claim if forced to do so in Oklahoma," Opp. at 20.  He testifies in his declaration that litigating in Oklahoma would impose substantial travel costs, including airfare, rental cars, and hotel stays; that if he were to miss "any significant time away from work," his employer may withhold work or terminate his position entirely; and that being the primary wage-earner means that missed wages may threaten his ability to support his family.  Huddleston Decl. ¶ 12.

While the Court is sensitive to the potential financial strain involved in litigating this case in Oklahoma, serving as the named plaintiff in a class action is unlikely to carry with it the requirement that Huddleston travel to Oklahoma with much frequency, and Huddleston has failed to explain why litigating in Oklahoma would require substantially more time away from work than litigating in California such that he would be denied the ability to bring the case.  The Court cannot find on this record that honoring the forum-selection clause would mean that Huddleston "will for all practical purposes be deprived of his day in court."  *M/S Bremen*, 407 U.S. at 18.

### c.  Contravene Public Policy

"Courts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy."  *Rowen*

1   *v. Soundview Commc'ns, Inc.,* No. 14–CV–05530–WHO, 2015 WL 899294, at *3–4 (N.D. Cal. 2015).

2   "'[A] party challenging enforcement of a forum selection clause may not base its challenge on choice of

3   law analysis.'" *Marcotte,* 2014 WL 4477349, at *8 (quoting *Besag v. Custom Decorators, Inc.,* No. C

4   08–05463 JSW, 2009 WL 330934, at *3–4 (N.D. Cal. 2009) (called into question on other grounds

5   by *Narayan v. EGL, Inc.,* 616 F.3d 895, 899, 904 (9th Cir. 2010))).  "As a general matter, California

6   courts will enforce adequate forum selection clauses that apply to non-waivable statutory claims,

7   because such clauses do[ ] not waive the claims, they simply submit their resolution to another

8   forum." *Perry,* 2011 WL 4080625, at *5.

9           However, under certain circumstances, public policy considerations may lead to non-

10  enforcement of an otherwise valid forum selection clause:

11          [I]f the forum is not adequate, a forum selection clause that applies to a non-waivable
            statutory claim may, in fact, improperly compel the claimant to forfeit his or her statutory
12          rights. In such a case, the forum selection clause is contrary to the strong public policy of
            California and will not be enforced. More specifically, . . . the California Supreme Court
13          has held clearly and unequivocally that it is against the strong public policy of California
            to enforce a forum selection clause where the practical effect of enforcement will be to
14          deprive a plaintiff or class of plaintiffs of their unwaivable statutory entitlement to the
            minimum wage and overtime payments.

15  *Perry,* at *5 (internal citations omitted).  *See also Bayol v. Zipcar, Inc.*, No. 14–CV–02483–TEH, 2014

16  WL 4793935, at *3 (N.D. Cal. Sept. 25, 2014) (discussing cases and explaining that courts look at the

17  forum-selection clause and choice-of-law provision together when unwaivable rights are involved but

18  look at the forum selection clause in isolation when waivable rights are asserted).

19          Huddleston argues that enforcement of the forum-selection clause would operate in tandem with

20  the choice-of-law provision to apply Oklahoma law to his claims and "result in a wholesale waiver of **all**

21  state wage and hour remedies."  Opp. at 13-14 (emphasis in original).  This is so, he argues, because the

22  ICOA provides for the application of Oklahoma law, and under Oklahoma law, Huddleston does not

23  meet the statutory definition of "employee" and does not qualify for the sorts of unwaivable statutory

24  remedies to which he would otherwise be entitled under California law.

25

1    The Court is unpersuaded that transferring this case to the Northern District of Oklahoma would

2    serve to extinguish Huddleston's California state law claims.  The ICOA's choice-of-law provision is

3    narrower than the forum-selection clause.  The ICOA states that the ICOA itself "shall be interpreted in

4    accordance with, and governed by, the laws of the United States and, of the State of Oklahoma," without

5    applying a choice-of law analysis.  ICOA ¶ 23.  The forum-selection clause, by contrast, states more

6    broadly that "any claim or dispute arising from or in connection with this agreement, whether under

7    federal, state, local, or foreign law . . . shall be brought exclusively in the state or federal courts serving

8    Creek County, Oklahoma . . . ."  *Id.*  In other words, while the "in connection with" language is broad

9    enough to encompass Huddleston's misclassification claims and bring them under the umbrella of the

10   forum-selection clause, the ICOA provides that Oklahoma law applies only to interpretation of the

11   ICOA itself.  *LaCross v. Knight Transportation, Inc*., 95 F. Supp. 3d 1199, 1206 n.4 (C.D. Cal. 2015)

12   (construing similar contract and holding that "while Plaintiffs' misclassification claims 'relate to' the

13   ICOA (and thus trigger the forum-selection clause) they would likely not be governed by Arizona law,

14   as only 'the agreement' itself is governed by such law").

15   Whether JCT violated the California Labor Code and Wage Orders will be answered not by

16   looking to the ICOA but instead by the statutes and regulations governing Huddleston's claims.  *See*

17   *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010) ("Whether the Drivers are entitled to

18   [California Labor Code] benefits depends on whether they are employees of [the defendant], which in

19   turn depends on the definition that the otherwise governing law—not the parties—gives to the term

20   'employee.'  While the contracts will likely be used as evidence to prove or disprove the statutory

21   claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or

22   otherwise require there to be a contract.").  California's labor laws "are part of a broad regulatory policy

23   defining the obligations" of employers "without regard to the substance of [their] contractual

24   obligations."  *Narayan*, 616 F.3d at 897; *see also id.* ("[S]tatutes enacted to confer special benefits on

25   workers are designed to defeat rather than implement contractual arrangements." (internal quotation

17

marks omitted)).  Although the ICOA "will likely be used as evidence" to support Huddleston's

statutory claims, his "claims do not arise out of the contract, involve the interpretation of any contract

terms, or otherwise require there to be a contract" in the first place.  *Narayan*, 616 F.3d at 899; *see*

*Elijahjuan v. Superior Court*, 210 Cal. App. 4th 15, 21 (2012) (holding that a lawsuit "to enforce rights

arising under the Labor Code benefitting employees but not independent contractors" did not "concern

the application or interpretation of the" parties' employment agreements because the "petitioners' rights

under the Labor Code are distinct from their contractual rights under the [a]greements").  *See also*

*Narayan*, 616 F.3d at 899; *Quinonez v. Empire Today, LLC*, No. 10–cv–02049 (WHA), 2010 WL

4569873, at *2–3 (N. D. Cal. Nov. 4, 2010); *Ronlake v. US–Reports, Inc*., No. 11–cv–2009 (LJO)(MJS),

2012 WL 393614, at *4 (E. D. Cal. Feb. 6, 2012).

Huddleston urges that the Court "apply its decision in *Ronlake* and conclude that JCT's forum-

selection clause is unenforceable."  Opp. at 17.  Two facts in the contract at issue in *Ronlake*, however,

distinguish it from the instant case.  First, the forum-selection clause in *Ronlake* provided that the

agreement "*and all issues regarding the rights and obligations of the Members,* the construction,

enforcement and interpretation hereof . . . shall be governed by the provisions of the law in New York."

2012 WL 393614, at *1 (emphasis supplied).  The agreement sought to impose New York law, with the

potential effect of displacing unwaivable California statutory protections to which the plaintiffs would

otherwise be entitled, *id*. at *3-*4 and thus had broader reach than the choice-of-law provision in the

ICOA here.  Second, the forum-selection clause in *Ronlake* applied only to claims "arising out of" the

agreement, narrow language that did not apply to misclassification claims that did not rely on contract

interpretation for resolution.  *Id*. at *4.  The forum-selection clause here, as discussed above, uses

broader language that does cover claims brought "in connection with" the employment relationship,

even if they do not rely on interpretation of the ICOA itself.

The Court concludes that the forum selection clause of the ICOA is valid and enforceable.

**2.      1404(a) Analysis**

18

1    In a case not involving a forum-selection clause, a district court considering a Section 1404(a)

2    motion would evaluate both the convenience of the parties and various public interest considerations.

3    *Atl. Marine*, 134 S. Ct. at 581.  When the parties' contract contains a forum selection clause, however,

4    the "calculus changes" and district courts must adjust their usual Section 1404(a) analysis in three ways:

5    (1) the plaintiff's choice of forum merits no weight; (2) arguments about the parties' private interests

6    should not be considered; and (3) a § 1404(a) transfer of venue "will not carry with it the original

7    venue's choice-of-law rules." *Id*. at 581–82.

8    Because the parties' private interests should not be considered, the district court may consider

9    only arguments about public-interest factors.  *Id*. at 582.  Public-interest "factors will rarely defeat a

10   transfer motion, [meaning that] the practical result is that forum-selection clauses should control except

11   in unusual cases." *Id*.  "Public-interest factors may include 'the administrative difficulties flowing from

12   court congestion; the local interest in having localized controversies decided at home; [and] the interest

13   in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 581 n.6 (quoting

14   *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted)).

15                  **a.      Localized Interests**

16   Huddleston argues that his claims brought pursuant to the Private Attorney General Act

17   ("PAGA") are of such a strong local nature that they should be litigated in California.  The California

18   Supreme Court has likened PAGA actions to *qui tam* actions in that a representative plaintiff brings an

19   action "as the proxy or agent of the state's labor enforcement agencies, representing the same legal right

20   and interest as those agencies and seeking statutory civil penalties that otherwise would be sought by

21   those agencies." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 394 (2014) (internal

22   quotation marks and citation omitted).  PAGA cases "function[] as a substitute for an action brought by

23   the government itself." *Id*.  Because the state of California is the real party in interest in this "quasi-

24   administrative enforcement action," Huddleston argues, the state has a strong interest in having the case

25   litigated at home.  Opp. at 24.  Huddleston has presented no case law to support the idea that PAGA

cases are exempt from application of forum-selection clauses and has offered no explanation why the

Northern District of Oklahoma could not fairly adjudicate these claims.  The state of California may

have an interest in the outcome of this dispute, but that interest is not so overwhelming or unusual that

this should be an exception to the general rule that a valid forum-selection clause should be honored.

*LaCross*, 95 F. Supp. 3d at 1206 n.5 (holding that a representative PAGA claim could be litigated in

Arizona federal courts); *see also id.* (citing *Iskanian* for the proposition that representative PAGA claims

may be brought in forums other than California state courts).

Huddleston makes the related argument that the PAGA claims fall outside the ambit of the

forum-selection clause.  Opp. at 24.  In *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), the Supreme

Court held that a governmental agency was not bound by an employee's arbitration agreement such that

it was barred from pursuing judicial relief in an enforcement action.  *Id.* at 294.  Huddleston argues that

just as the EEOC was not bound by an agreement to which it was not a party, the PAGA claims here

belong to the state of California and therefore fall outside the ambit of the forum-selection clause.  The

opinion in *Waffle House* was fairly narrow and distinguishable from the facts here.  The "only issue"

before the Supreme Court in *Waffle House* was "whether the fact that [an employee] has signed a

mandatory arbitration agreement limits the remedies available to the EEOC."  *Id.* at 297.  The Court held

that an arbitration agreement to which the EEOC was not a party could not limit the remedies otherwise

granted to the EEOC by statute, which not only had the authority to pursue independent actions in court

for Title VII violations but, in the context of the suit, also had "exclusive authority over the choice of

forum and the prayer for relief once a charge has been filed."  *Id.* at 298.  Here, in contrast, the forum-

selection clause is not limiting any remedies that would otherwise be available to the government or

removing the case from the courts completely; instead, it merely "alters which specific court will hear

those claims."  *LaCross*, 95 F. Supp. 3d at 1207 n.6.

### b. <u>Familiarity With Governing Law</u>

Huddleston contends that because thirteen of the nineteen causes of action are based on

California law, a California federal court will be better equipped to apply California state law than an Oklahoma court would be.  Opp. at 21-22.  Huddleston does not exclusively bring California claims; the Complaint also contains four causes of action under Oklahoma law, and in any case, "federal judges routinely apply the law of a State other than the State in which they sit."  *Atl. Marine*, 134 S. Ct. at 584. This factor does not weigh against transfer.

### c.      Administrative Difficulties

"Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (superseded on other grounds).  Huddleston has submitted no evidence of court congestion particular to Oklahoma as opposed to California.  As it is his burden to show the public interest factors weigh in his favor, he has failed to meet his burden as to this public interest factor.

In sum, the Court finds that the public-interest factors do not "overwhelmingly disfavor" enforcing the forum-selection clause.  *See Atl. Marine*, 134 S. Ct. at 583.  Huddleston has not met his burden of demonstrating that this is an "exceptional case" in which the Court should set aside a valid forum-selection clause.  *See id.* at 581.

### V. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's Motion To Dismiss Or, In The Alternative, To Transfer Venue, and **ORDERS** this case **TRANSFERRED** to the Northern District of Oklahoma for all further proceedings.

IT IS SO ORDERED.

Dated:   **September 27, 2017**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE

21